# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREAM, INC and ROOR INTERNATIONAL BV,<br><br>Plaintiffs,<br><br>v.<br><br>ANDY'S SMOKE SHOP, INC.,<br><br>Defendant. | Case No.: 18cv1676-MMA (RBB)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 8] |

Plaintiffs Sream, Inc. ("Sream") and RooR International BV ("RooR") (collectively, "Plaintiffs"), bring this civil action against Andy's Smoke Shop, Inc. ("Defendant"), for trademark infringement in violation of 15 U.S.C. § 1114, counterfeiting in violation of 15 U.S.C. § 1116, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair competition in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq*., and common law unfair competition. Doc. No. 1 ("Compl."). The claims arise from Defendant's alleged sale of a counterfeit, copy, and/or imitation of a product bearing one or more of the trademarks owned by Plaintiffs. *See id.* Plaintiffs seek to enjoin Defendant from infringing Plaintiffs' marks, statutory damages for willful trademark counterfeiting, attorney's fees and costs. *Id.*

On July 26, 2018, Plaintiffs served Defendant's registered agent for service of process. Doc. No. 5. Defendant failed to respond. *See* Docket. On September 3, 2018, Plaintiffs requested the clerk enter default against Defendant, and default was entered the next day. Doc. Nos. 6, 7. On September 14, 2018, Plaintiffs filed a motion for default judgment. Mtn. The motion is unopposed. *See* Docket. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 12. For the reasons set forth below, the Court **GRANTS IN PART** the motion and **DIRECTS** the Clerk of Court to enter judgment accordingly.

## BACKGROUND

Since 1995, Martin Birzle has marketed and sold smoker's products using the trademark "RooR." Compl. ¶ 9. Mr. Birzle, who was originally granted "valid and subsisting federal statutory and common law rights to the RooR trademark," assigned to RooR all the rights associated with the trademark retroactively, which was duly recorded with the United States Patent and Trademark Office ("USPTO") on January 10, 2018. Compl. ¶ 11. As such, RooR is the owner of the following United States trademarks registered on the Principal Register: (1) U.S. Trademark Registration Number 3.675.839 for the word mark "RooR" and its logo in association with goods further identified in registration in international class 034; (2) U.S. Trademark Registration Number 2.307.176 for the word mark "RooR" and its logo identified in association with goods further identified in the registration and international classes 025 and 034; (3) U.S. Trademark Registration Number 2.235.638 for the word mark "RooR" and its logo identified in association with goods further identified in the registration in international class 021; and (4) common law and unregistered state law rights in two variants of the "RooR" marks. Compl. ¶ 12. Sream has been the exclusive licensee of the RooR marks in the United States since 2013. Compl. ¶¶ 13-16.

Plaintiffs contend that products bearing the RooR marks sell for higher prices than similar products because of the substantial financial investment and marketing effort by Plaintiffs and Mr. Birzle in developing consumer awareness of the RooR marks. Compl.

¶ 18. As a result, RooR branded products are targeted by counterfeiters, who often sell water pipes with identical or nearly identical versions of the RooR marks affixed to the products that are made with inferior materials and technology. Compl. ¶ 21. In turn, this leads to "significant illegitimate profits by store owners, such as [Defendant]," who are essentially misleading consumers by selling "low grade products that free ride on the goodwill of the RooR brand." *Id.*

Plaintiffs allege that Defendant has sold water pipes bearing reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR trademarks that were not made by Plaintiffs or a manufacturer authorized by Plaintiffs. Compl. ¶¶ 23, 31. As part of its ongoing investigation into sales of counterfeit products, an investigator purchased a glass water pipe from Defendant for $129.60. Compl. ¶ 24. Plaintiffs' inspection of the item confirmed that it was a counterfeit good with an infringing trademark affixed to it. Compl. ¶ 25. Plaintiffs allege that Defendant imports, advertises, displays, distributes, sells, and/or offers for sale unauthorized copies of RooR branded products, which is likely to cause confusion or mistake and/or deceive consumers who purchase these counterfeit goods. Compl. ¶ 26. Defendant allegedly uses images and names identical to or "confusingly similar to" the RooR marks to "confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Mark." Compl. ¶ 28. Additionally, these water pipes are made of "substantially inferior materials and inferior technology as compared to genuine RooR brand products." Compl. ¶ 30. As such, Plaintiffs allege that Defendant's infringing acts have caused or are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of the counterfeit goods it sells, and has diminished Plaintiffs' goodwill. Compl. ¶¶ 34, 35.

## DISCUSSION

### A. Jurisdiction

Courts have an affirmative duty to ensure the proper exercise of subject matter jurisdiction and personal jurisdiction when a default judgment is sought. *In re Tuli*, 172

F.3d 707, 712 (9th Cir. 1999). In this case, the Court is satisfied it has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) because the case arises out of claims of trademark infringement, counterfeiting, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.* This Court has supplemental jurisdiction for the unfair competition claims arising from California Business & Professions Code § 17200, *et seq.* and common law pursuant to 28 U.S.C. §§ 1367(a) and 1338(a) and (b). The Court is also satisfied that Plaintiffs have alleged facts sufficient to establish personal jurisdiction over Defendant because Defendant is incorporated in California. Compl. ¶ 7; *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014) (holding that a corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business).

In addition, the Court must determine whether Defendant was properly served with notice of this action. Upon review of the Proof of Service of Summons (*See* Doc. No. 5), the Court finds that Plaintiffs effected service of process in conformity with Federal Rule of Civil Procedure 4 and California Code of Civil Procedure § 416.10. *See* Fed. R. Civ. P. 4; s*ee also* Cal. Code Civ. P. § 416.10.

**B.** **Legal Standard**

Pursuant to Federal Rule of Civil procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rule of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing the *Eitel* factors, all factual allegations in the complaint are taken as true, except those with

regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**C.    Analysis**

Based on the analysis below, the Court concludes that the *Eitel* factors weigh in favor of entering default judgment in this case.

   *1.    Possibility of Prejudice to Plaintiffs*

With respect to the first factor, if the pending motion were denied, Plaintiffs would likely be without a remedy. If Defendant does not appear in court, Plaintiffs have no method of addressing this matter. Absent entry of default judgment, Plaintiffs would be deprived of the remedies they are entitled to. As a result, the first factor weighs in favor of default judgment. *See Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff will be without other recourse for recovery.").

   *2.    Substantive Merits and Sufficiency of the Claims*

Under the second and third *Eitel* factors, the Court may consider the merits of Plaintiffs' substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. These two factors require that Plaintiffs "'state a claim on which the [Plaintiffs] may recover.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citation omitted). Plaintiffs seek relief for trademark infringement, counterfeiting, false designation of origin, and unfair competition. Compl. The essential elements of Plaintiffs' claims are identical. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 631-32 (9th Cir. 2008) (noting that claims for trademark infringement, false designation of origin, and unfair competition are "subject to the same test"); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 n.8 (9th Cir. 1999) (noting that elements of false designation of origin are identical to the elements for trademark infringement); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially

congruent' to claims under the Lanham Act."); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (explaining that the elements for trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114 and 1116(d) are the same). Therefore, the Court jointly analyzes all of Plaintiffs' claims.

To prevail on these claims, Plaintiffs must prove: (1) they own a valid and protectable interest/trademark; (2) Defendant used, without authorization, a copy, reproduction, counterfeit or colorable imitation of the Plaintiffs' mark in connection with the sale, distribution, or advertising of goods and services; and (3) Defendant's use of the mark is likely to cause confusion or to deceive. 15 U.S.C. § 1114(1); *Brookfield Commc'ns*, 174 F.3d at 1046-53; *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072-73 (C.D. Cal. 2004).

First, the federal registration of a trademark with the USPTO constitutes *prima facie* evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Here, Plaintiffs have provided sufficient evidence that RooR and Sream[1] have valid, protectable interests in the registered RooR marks. *See* Compl., Exhibit B.

Second, Plaintiffs allege that Defendant used marks that are very similar to the registered RooR trademarks, and that it did so in connection with the sale of certain products used for smoking. Compl. ¶¶ 23-45. Specifically, Defendant allegedly

---

[1] "Although the Ninth Circuit has yet to address the question, most district courts in this circuit have concluded that an exclusive licensee of a federal trademark *can* have standing to sue for trademark infringement under Section 32 of the Lanham Act. That said, even the courts taking this more lenient approach have stated that standing can only 'exist where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee.'" *Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC*, No. 17-cv-0756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (footnote omitted) (quoting *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL 1007666, at *6 (N.D. Cal. Mar. 13, 2013)). Here, Plaintiffs allege that Sream is the exclusive licensee for the RooR marks with rights tantamount to those of an assignee. Compl. ¶¶ 13-16.

manufactures, distributes, provides, markets, advertises, promotes, offers for sale, and/or sells the counterfeit products at its retail store. Compl. ¶ 31. Plaintiffs provide an image of the RooR trademarks, as well as one of the allegedly infringing marks. Compl. ¶ 12, Exhibits B-C. Plaintiffs also allege that they did not authorize Defendant's use of these trademarks, and that their use was, and remains likely to confuse or deceive customers, who would reasonably believe that Defendant's products have been sponsored or approved by, or otherwise associated with Plaintiffs. Compl. ¶ 54. Because the photos of Plaintiffs' trademarks and Defendant's product are substantially similar, the Court finds that Defendant has used the RooR marks on counterfeit products without Plaintiffs' consent.

Third, the Ninth Circuit has identified eight factors to consider in determining whether a likelihood of confusion exists between products bearing an original trademark and allegedly infringing products, however "'in cases involving counterfeit marks, it is unnecessary to perform this step-by-step examination . . . because counterfeit marks are inherently confusing.'" *Shalabi*, 352 F. Supp. 2d at 1073 (citation omitted). As explained previously, the photos of Plaintiffs' trademarks and Defendant's product demonstrate that Defendant's counterfeit product bears the RooR mark. Accepting this as true, an ordinary consumer encountering the marks in a store would likely be confused by the similarities. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) (explaining that an inference of confusion may be found when a mark is adopted with the intent to deceive the public). The Court finds that by using an identical mark as Plaintiffs' RooR products, Defendant intended to deceive the public and that the buying public would likely believe the counterfeit products were in fact RooR products.

Finally, there is evidence sufficient to support a finding of willful infringement. "Willfulness requires a connection between the defendant's awareness of its competitors and the defendant's actions at those competitors' expense." *Otter Prods., LLC v. Berrios*, No. 13-cv-4384-RSWL-AGR, 2013 WL 5575070, at *9 (C.D. Cal. Oct. 10, 2013) (citing *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir.

2011)). Here, Plaintiffs allege Defendant's acts constitute willful trademark infringement. Compl. ¶ 57. A party's failure to defend itself against willful trademark infringement and counterfeiting is indicative of willful trademark infringement. *See Kirakosian v. J&L Sunset Wholesale & Tobacco*, No. 2:16-cv-06097-CAS(PLAx), 2017 WL 4022365, at *5 (C.D. Cal. Sept. 11, 2017) (noting that the failure of a party to defend itself against allegations of trademark counterfeiting is indicative of willful trademark infringement); *Castworld*, 219 F.R.D. at 500 (noting that defendants' failure to answer an allegation of willful importation of counterfeit cigarettes constituted an admission of the allegations in the complaint).

Accordingly, the Court finds that Plaintiffs have sufficiently stated claims for relief for trademark infringement, counterfeiting, false designation of origin, and unfair competition. As such, the second and third factors weigh in favor of entry of default judgment.

### 3. *The Sum of Money at Stake in the Action*

Pursuant to the fourth *Eitel* factor, the Court balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see Eitel*, 782 F.2d at 1471-72. Entry of default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in relation to [D]efendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Here, Plaintiffs seek statutory damages of $200,000 and injunctive relief from the continued use of the RooR marks by Defendant. Mtn. at 15-21. "Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). Therefore, this factor weighs in favor of the entry of default judgment. Additionally, Plaintiffs request for non-monetary, injunctive relief also favors granting default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1177.

//

### 4. Possibility of Dispute

The fifth *Eitel* factor requires the Court to consider the possibility of dispute as to material facts in the case. Where a plaintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). "Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Thus, this favors entry of default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether Defendant's default may have been the product of excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471-72. Here, there is no evidence that Defendant's failure to respond was due to excusable neglect. Defendant was served with the summons and Complaint. *See* Doc. No. 5. Default was entered by the clerk against Defendant on September 4, 2018. Doc. No. 7. Defendant has not responded, even after it was served with the instant motion. *See* Doc. No. 8-5. "Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect." *Adobe Sys. Inc. v. Kern*, No. C 09-1076 CW (JL), 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009). Defendant "has failed to act despite the opportunity to do so, with full knowledge that a lawsuit was filed against [it] and that it was [Defendant's] responsibility to respond." *Id.* Accordingly, this factor weighs in favor of entry of default judgment.

### 6. Public Policy in Favor of Deciding the Merits

Under the seventh *Eitel* factor, the Court considers the strong policy towards favoring decisions on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided on the merits whenever reasonably possible."). Notwithstanding this policy, courts are not prevented from entering default judgment where a defendant refuses to respond. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendant failed to respond to Plaintiffs'

Complaint, the clerk's entry of default, and this motion for default judgment. *See* Docket. A party's failure to answer or appear makes a decision on the merits impractical, if not impossible. *PepsiCo*, 238 F. Supp. 2d at 1177. As a result, this factor does not preclude entry of default judgment.

### 7. *Conclusion Regarding the Factors*

After analyzing the *Eitel* factors, the Court finds that on balance they weigh in favor of granting Plaintiffs' motion for default judgment.

## D. Relief

Plaintiffs seek statutory damages under the Lanham Act, injunctive relief, and attorneys' fees and costs. Mtn. 17-21. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Under Federal Rule of Civil Procedure 54(c), relief sought in a motion for entry of default judgment is limited to that identified in the complaint. Fed. R. Civ. P. 54(c).

### 1. *Damages for the Lanham Act Claims*

Under the Lanham Act, plaintiffs may recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Where a defendant's conduct is willful, the court may grant enhanced statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Although 15 U.S.C. § 1117(c) does not provide guidelines for determining an appropriate statutory damages award, courts faced with determining statutory damages under the Lanham Act have considered the following factors: (1) expenses saved and profits obtained by the infringing party; (2) revenues lost by the holder of the mark; (3) value of the mark; (4) the deterrent effect on the infringing party and other potential infringers; (5) whether the infringing conduct was willful; and (6) whether the infringing party has

10

18cv1676-MMA (RBB)

cooperated in providing information from which the financial benefit of the infringement can be calculated. *Nop*, 549 F. Supp. 2d at 1237.

Plaintiffs seek statutory damages of $200,000 for the infringement of its RooR trademarks. Mtn. at 19. Plaintiffs submitted evidence showing that an investigator purchased a counterfeit RooR product from Defendant for $129.60. Compl., Exhibit C. Plaintiffs also contend that the retail price for authentic RooR pipes is approximately $300. Compl. ¶ 20. Additionally, Plaintiffs assert that Defendant has refused to cooperate with Plaintiffs' attempts to review Defendant's business records in order to determine the volume of counterfeit sales and the corresponding revenues. Doc. No. 8-2 ("Vakil Decl.") ¶ 2-6. Plaintiffs argue that such "[c]ontinued refusals" show that Defendant's sale of counterfeit RooR products has been "continuous and more widespread" than the single product sold to Plaintiff's investigator. Mtn. at 18. Further, Plaintiffs note that the investigator declared that Defendant was offering for sale seven RooR water pipes that he believed to be counterfeit. *Id.*; Doc. No. 8-3 ("Mottesheard Decl."), Exhibit D. As explained above, Plaintiffs sufficiently allege willful infringement. Thus, Plaintiffs argue that the proposed award of $200,000 will send "a clear message to the industry that counterfeiting" and "refusing to cooperate with discovery demands (even if informally presented)" will not be tolerated. Mtn. at 19.

Here, Plaintiffs did not submit evidence addressing the expenses saved and profits reaped by Defendant or the revenues lost by Plaintiff. *See* Mtn. While Plaintiffs contend their sales in California have declined "in excess of $1,200,000" from 2015 to 2017 as a result of "the proliferation of counterfeit RooR products in the marketplace," they do not estimate what amount is attributable to Defendant's conduct. *Id.* at 19. Plaintiffs note that "Defendant probably hasn't sold millions of counterfeit products," but has sold "more than one unit." *Id.* at 18-19. Plaintiffs explain that they cannot provide specific calculations because Defendant failed to respond to its informal discovery requests. Vakil Decl. ¶ 2-6; Mtn. at 18. However, Plaintiffs' investigator reported there were seven likely counterfeit water pipes on display at the time he entered the store. Mottesheard

11

Decl., Exhibit D. This does not suggest that the counterfeit pipes were sold on a large scale.

Additionally, the only evidence submitted of a counterfeit good was a single water pipe purchased by Plaintiffs' investigator for $129.60. Compl., Exhibit C. There are no factual allegations or evidence demonstrating Defendant's infringement of the RooR marks registered for use in association with goods identified in international classes 025 or 021, which are defined as smoker's articles, namely, cigarettes, cigars, tobacco pouches, humidors, tobacco spittoons, chewing tobacco, smoking tobacco and matches, and glass bowls, including those that are enameled, opal, pressed, smoothed plate, speckled, spun, stamped or unwrought glass. Compl., Exhibit B. Plaintiffs only produced evidence showing Defendant's sale of infringing goods from class 034, which includes glass pipes and water pipes, and thus, has only pled specific factual allegations relating to Defendant's infringement of the RooR trademark registered as number 3.675.839. *Id.* Because there are no specific allegations as to Defendant's infringement of the trademarks from the remaining categories of goods, the Court declines to award statutory damages for infringement of the trademarks registered under numbers 2.307.176 and 2.235.638.

Based on the foregoing, the Court awards Plaintiffs statutory damages for one infringed trademark totaling $25,000. *See Sream, Inc. v. Lavinga*, No. ED CV16-00806-JAK (KKx), 2016 U.S. Dist. LEXIS 106540, at *17-19 (C.D. Cal. Aug. 10, 2016) (awarding $25,000 in statutory damages on evidence of one counterfeit product); *see also Sream, Inc. v. Reeves*, No. 5:14-cv-01321-JGS-SP, Doc. No. 20 at 5-6 (C.D. Cal. Sept. 30, 2014) (awarding $50,000 in statutory damages on evidence of one counterfeit product). This amount is likely to deter Defendant and others from infringing the RooR marks and appears to be commensurate with the value of the goods, which is about $300 per RooR brand water pipe. *See* Compl. ¶ 20. The Court finds a greater award would be excessive given the relatively small infringement alleged and that $25,000 in statutory damages is reasonably proportionate to the willful harm that Defendant caused.

### *2. Injunctive Relief*

Plaintiffs also seek to permanently enjoin Defendant from infringing on the RooR marks. Mtn. at 6. The Lanham Act gives the Court the power to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a). To warrant injunctive relief for trademark infringement, a plaintiff seeking a permanent injunction must demonstrate: (1) it has suffered and will continue to suffer an irreparable injury; (2) remedies available at law, including monetary damages, are inadequate; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) that an injunction is in the public interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

"[W]hen a plaintiff establishes in a trademark infringement or unfair competition action a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable harm if an injunction is not granted." *Otter Prods., LLC*, 2013 WL 5575070, at *11 (citing *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007); *Bision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989)). Moreover, the Ninth Circuit has recognized that irreparable harm may be shown through "[e]vidence of threatened loss of prospective customers or goodwill." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). Plaintiffs' pleadings show a likelihood of confusion as to the origin of the infringing products, and also loss of control over its mark, reputation and goodwill. Plaintiffs allege that they spent considerable time and effort building the RooR reputation, and have sold smoker's products under the RooR mark since 1995. *See* Compl. ¶¶ 18, 21, 34. From 2015 to 2017, sales in California have declined "in excess of $1,200,000," allegedly as a result of Defendant and others selling counterfeit products bearing the RooR mark. Mtn. at 19. Taking these facts as true and drawing all reasonable inferences therefrom, Plaintiffs have shown that they have suffered and will continue to suffer irreparable harm by Defendant's continued use and infringement of Plaintiffs' RooR marks.

As to the second requirement, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Sandlin*, 846 F.2d at 1180. Moreover, "[d]amage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages." *Car-Freshner Corp. v. Valio, LLC*, No. 2:14-cv-01471-RFB-GWF, 2016 WL 7246073, at *8 (D. Nev. Dec. 15, 2016). Here, Plaintiffs allege that unless enjoined, Defendant will continue to infringe upon Plaintiff's RooR marks. Mtn. at 20; Compl. ¶¶ 36, 75. Thus, Plaintiffs adequately allege that Defendant used and will continue to use counterfeit products. Compl. ¶ 75. Additionally, there is no showing that, absent the entry of an injunction, Defendant will discontinue its infringement of the protected trademarks. Accordingly, monetary damages are inadequate to address the alleged ongoing infringement and the harm that it will cause to Plaintiffs.

Third, the balance of hardships favors Plaintiffs because without an injunction, Plaintiffs will lose profits, goodwill, and rights to control the quality of its products, whereas an injunction will only proscribe Defendant's infringing activities. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012). In other words, an injunction will not adversely affect any of Defendant's "legitimate business operations, nor will [it] suffer any cognizable hardship as a result of its issuance. Conversely, Plaintiff[s] will suffer harm in the form of disfavor from clients if [Defendant's] activities continue." *Shalabi*, 352 F. Supp. 2d at 1075.

Furthermore, the public has an interest in not being misled as to the origin or source of trademarked goods. *See State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005) (noting that "[t]rademarks protect the public from confusion by accurately indicating the source of a product" and "preserve a producer's good will"); *see also Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009). As such, the public interest favors

injunctive relief. Therefore, the Court finds that Plaintiffs have met the statutory and equitable requirements for permanent injunctive relief prayed for in the Complaint.

### 3. *Attorneys' Fees and Costs*

Plaintiffs seek an award of reasonable attorneys' fees and costs under the Lanham Act for Defendant's infringing conduct. Mtn. at 21. Plaintiffs request $5,475.00 in attorneys' fees and $480.00 in costs. Vakil Decl. ¶ 13.

Section 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).[2] The term "exceptional" is generally understood to mean cases in which the trademark infringement can be characterized as "'malicious, fraudulent, deliberate, or willful.'" *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (citation omitted). Additionally, a case may be deemed "exceptional" and merit an award for attorneys' fees under the Lanham Act, where the defendant disregards the proceedings and does not appear. *See Castworld*, 219 F.R.D. at 502. However, "[t]he Court is not compelled to award attorney's fees even if the case is exceptional." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1186 (D. Nev. 2013), *aff'd*, 778 F.3d 1059 (9th Cir. 2015). The Court finds that this case is "exceptional" because Plaintiffs adequately allege Defendant's conduct was willful and Defendant has not appeared in this action. However, for the reasons set forth below, the Court declines to award attorneys' fees in this instance.

In determining the amount of a fee award under the Lanham Act, courts must "first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l,*

---

[2] Plaintiffs are entitled to apply for attorneys' fees under 15 U.S.C. § 1117(a) even though they elected statutory damages under 15 U.S.C. § 1117(c) instead of actual damages under § 1117(a). *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, -- Fed. App'x --, Nos. 16-56138, 16-56401, 16-56500, 2018 WL 3544824, at *2 n.2 (9th Cir. July 24, 2018); *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (quoting *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 81 (2002)); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

*Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). In determining a reasonable number of hours, courts must review detailed time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours claimed by the applicant were unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable rate for each attorney, courts must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id.*

Plaintiffs submit a single declaration in support for their request for attorneys' fees. *See* Vakil Decl. Plaintiffs' attorney, Imran Vakil, declares that the firm "allocated 19.0 hours of time to this matter [and] charges between $275/hour to $400/hour depending on the skill and experience of the lawyer involved in the matter, plus $75/hour for paralegals. The fees are believed to be in line with, if not slightly below, industry averages of comparable attorneys. Our accounting shows that the total time translates to $5,475.00 in attorneys' fees." Vakil Decl. ¶ 13. This declaration is insufficient, as it fails to provide the Court with detailed time records and information regarding each attorney who worked on the case and their hourly rate. *See id.* For example, Plaintiffs fail to list the number of attorneys working on the case, their names, how long they have been an attorney, and their respective hourly rates. *See id.* Moreover, Plaintiffs do not provide a billing statement indicating which tasks were performed by which attorney, or how long each task took. *See id.* Even further, Plaintiffs do not demonstrate that the hourly rates requested are reasonable vis-à-vis the rates charged in "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (quotation marks and citation omitted). Without this information, the Court can neither determine whether the rates for each attorney who worked on the case is reasonable, nor whether the hours claimed are unnecessary, duplicative, or excessive. *See Chalmers*, 796 F.2d at 1210; *see Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1261-63 (9th Cir. 1987) ("The fee applicant has the burden of producing satisfactory evidence, *in addition to*

*affidavits of its counsel*, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.") (emphasis added).

Plaintiffs have not met their "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate[;]" therefore, they are not entitled to an award of attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1987); *see also Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) ("in a case in which a defendant fails to appear or otherwise defend itself, however, the burden of scrutinizing an attorney's fee request—like other burdens—necessarily shifts to the court."); *see also Century Tile, Inc. v. Hirsch Glass Co.*, 467 Fed. App'x 651, 653 (9th Cir. 2012) (finding "district court acted within its discretion in denying attorney's fees"); *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000) ("[T]he Lanham Act *permits*, but does not mandate, an award of attorneys' fees to a prevailing party in 'exceptional circumstances.'").

A plaintiff that prevails on a claim under § 1125(a) is entitled to costs under the Lanham Act. 15 U.S.C. § 1117(a). Here, Plaintiffs have prevailed on their false designation of origin claim under § 1125(a), and therefore are entitled to costs. Mr. Vakil declares that Plaintiffs incurred costs in the amount of $480.00 in prosecuting its claims against Defendant. Vakil Decl. ¶ 13. Specifically, Plaintiffs incurred costs of $400 in complaint filing fees and $80 in service attributable to Defendant. *Id.* Although the Court may take judicial notice of its own filing fee, Plaintiffs must substantiate their service-of-process costs. *See* S.D. Cal. Civ. L.R. 54.1(a) (noting that a party seeking costs must provide copies of the invoices for requested costs). Plaintiffs have not done so. Thus, the Court finds that Plaintiffs are entitled to recovery of only the filing fee. *See* 28 U.S.C. 1920; *see also* S.D. Cal. Civ. L.R. 54.1. As such, the Court awards Plaintiffs costs in the amount of $400.

//
//

## CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** Plaintiffs' motion for default judgment against Defendant Andy's Smoke Shop, Inc. The Court **DIRECTS** the Clerk of Court to enter judgment against Defendant, and in favor of Plaintiffs in the total amount of **$25,400.00** (comprising of statutory damages of $25,000.00 and costs of $400.00).

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant Andy's Smoke Shop, Inc., and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all other persons acting in concern of participation with Defendant Andy's Smoke Shop are permanently restrained and enjoined from infringing upon the RooR Marks (United States Trademark Registration Nos. 3.675.839, 2.307.176, and 2.235.638) directly or contributorily, in any manner, including:

(a) import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit RooR product identified in the Complaint and any other unauthorized RooR product, counterfeit, copy or colorful imitation thereof;

(b) assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraph (a) above.

**IT IS SO ORDERED**.

Dated: October 23, 2018

*[signature]*

Hon. Michael M. Anello
United States District Judge

18

18cv1676-MMA (RBB)